UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | | |
|---|---|---|
| CONTINENTAL CASUALTY COMPANY AND AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA | ) ) ) | CASE NO. |
| | ) ) | |
| Plaintiffs, | ) ) | COMPLAINT |
| | ) | |
| v. | ) ) | |
| C.D STIMSON CO. | ) ) | |
| | ) | |
| Defendant. | ) ) | |
| | ) | |

## PARTIES

1.1     Continental Casualty Company (CCC) and American Casualty Company of Reading, Pennsylvania (ACC) (collectively "Plaintiffs" where appropriate) are Illinois (CCC) and Pennsylvania (ACC) corporations respectively, with their principle places of business in Chicago, IL.

1.2     C.D. Stimson Company is a Washington corporation with its principle place of business in Seattle, WA ("Stimson").

## JURISDICTION

2.1     The court has subject matter jurisdiction over this action for a declaratory judgment pursuant to 28 U.S.C. § 2201, because an actual justiciable controversy exists between the parties within the court's jurisdiction, as described more fully herein.

2.2    The court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 and the action is between citizens of different states.  The jurisdiction amount is satisfied because, as described more fully herein, the defendant[s] Stimson has submitted expenses that exceed $300,000 for payment by Plaintiffs and a dispute exists between the parties as to whether any or all expenses Stimson has submitted to Plaintiffs for payment as defense expenses for a "suit" or the functional equivalent of a "suit."

2.3    The court has personal jurisdiction over Stimson because it owns the property in Seattle, Washington that is the subject matter of this action.

2.4    Venue is proper pursuant to 28 U.S.C. § 1391(a) because Stimson's property, which is the subject of Plaintiffs' declaration of rights regarding insurance coverage, is within the judicial district of the United States District Court for the Western District of Washington.

FACTS

3.1    Plaintiffs are alleged to have issued the following policies to Stimson:  Continental Casualty Company primary policies nos.  CAP 436 16 43 effective March 1, 1972 to March 1, 1973, and CAP 996 01 11 effective March 1, 1973 to March 1, 1976; American Casualty Company of Reading, Pennsylvania primary policy nos.  BP 280 74 62 effective March 31, 1976 to March 31, 1977, BP 280 77 08 effective March 31, 1977 to March 31, 1978, BP 304 96 85 effective March 31, 1978 to March 31, 1979, BP 304 95 79 effective March 31, 1979 to March 31, 1980; Continental Casualty Company Umbrella Excess Policies Nos. RDU 806 16 95 effective November 26, 1969 to November 26, 1972, RDU 806 29 95 effective November 26, 1972 to November 26, 1975, RDU 212 62 62 effective December 26, 1975 to March 31, 1976, RDU 212 56 34 effective March 31, 1976 to March 31, 1977, and RDU 336 94 78 effective March 31, 1978 to March 31, 1979. Herein, these policies are collectively referred to as "the Policies."

COMPLAINT - 2
CASE NO.
#1081409 v1 / 44493-016

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

3.2     In December 2015, Stimson sent a letter to Plaintiffs providing "notice of Stimson's potential claims for damages, defense and indemnity" with regard to property it claims to own that is located at 4245-5423 Shilshole Avenue NW in Seattle, Washington ("Property").  This was Plaintiffs' first notice of Stimson's potential claims even though Stimson conducted environmental investigations at the property related to its redevelopment plans as early as 1997, and conducted additional investigations in 2010, 2011, 2012, and possibly at other times before its December 2015 first notice, for which Stimson now seeks payment.  According to its letter, "Stimson has owned the Property for more than a century" on which it operated a lumber mill from 1888 to 1955. Stimson's letter also describes "contemporary redevelopment" of part of the property that "envisions a mixed-use five-story building with one level of below-grade parking. Apparently in connection with that redevelopment, contamination allegedly arising from the mill operations was discovered.  Stimson has reported:  "[B]ased on information gathered to date, the Property includes soil contaminated with diesel-range petroleum hydrocarbons" and other alleged pollutants.  Additionally, Stimson claims the "Property also contains groundwater contaminated with arsenic."

3.3     Stimson claims to face "significant liability related to soil, ground water and methane gas contamination at the Property," citing Washington's environmental laws, including in particular Washington's Model Toxics Control Act, RCW 70.105D.  Stimson claims to "have reason to believe the releases of contamination occurred during CNA policy periods" and therefore notified Plaintiffs of their alleged "indemnity and defense responsibilities created by the primary and umbrella insurance policies CNA issued to Stimson."

3.4     According to Stimson, "as a condition of entitlements for redevelopment" it is "required by the City of Seattle to investigate the contamination, clean up the Property, and implement certain measures to address the methane gas."  These conditions for redevelopment include Stimson's participation in the Washington Department of

COMPLAINT - 3
CASE NO.
#1081409 v1 / 44493-016

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

Ecology's Voluntary Clean-Up program.  However, in 2013 Stimson withdrew from this program after it put its redevelopment plans on hold.

3.5   In February 2016, Plaintiffs responded to Stimson's letter and requested information about Stimson's alleged policies, site operations, and the alleged environmental contamination.   Plaintiffs also commenced a search for potentially applicable insurance policies.

3.6   After Stimson provided certain of the requested information and Plaintiffs completed their policy search, Plaintiffs reviewed the materials Stimson provided and investigated information available in the public domain from the regulatory agency.  On May 16, 2016, Plaintiffs issued a preliminary coverage determination based on information available at the time that among other things, reported that evidence of one alleged policy, CAP 436 16 43, could not be found, and requested further, non-duplicative information.

3.7   On September 1, 2016, Stimson responded with information purporting to establish the existence of policy no. CAP 436 16 43, information about other coverage potentially available under policies issued by General Insurance Company, and information documenting expenses incurred as far back as 1997.  However, Stimson did not notify Plaintiffs of any alleged claim until December 2015 and did not submit any cost documentation or make a specific payment request until August 2016.  Stimson has requested payment of $363,671.47.

3.8   On December 13, 2016, Plaintiffs issued a payment for $41,218.89 subject to a reservation of rights, including the right to modify their coverage position.

3.9   Having now reviewed all of the documentation provided by Stimson, and having conducted additional analysis, Plaintiffs believe that none of the amounts Stimson submitted for reimbursement are covered by the Policies.   In short, Stimson has not been sued by Washington's Department of Ecology or any other third party, nor has any person or entity taken any other coercive or adversarial action against Stimson that is the functional equivalent of a suit seeking damages on account of property damage.  Rather,

COMPLAINT - 4
CASE NO.
#1081409 v1 / 44493-016

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

as a condition to redevelop its own property, Stimson is being required to address certain conditions that exist on that property. Therefore, Plaintiffs have no duty to defend or pay defense expenses related to Stimson's redevelopment activities, including those expenses incurred in connection with Stimson's voluntary clean-up under Washington Department of Ecology's Voluntary Clean-Up program.

CLAIM FOR RELIEF

DECLARATORY JUDGMENT

4.1    The foregoing allegations are incorporated by reference.

4.2    An actual controversy exists between Plaintiffs and Stimson concerning the rights and obligations of Plaintiffs under the Policies listed above.

4.3    Plaintiffs seek a declaration as to the following:

a. Under the primary policies, Plaintiffs' obligation to defend extends only to a "suit," which under Washington law includes the functional equivalent of a suit, described by Washington courts as "adversarial or coercive in nature." Under the umbrella excess policies, Plaintiffs have no obligation to defend unless there is an occurrence not covered in whole or in part by underlying insurance or to which there is no other insurance in any way applicable, but which is covered under the umbrella policies. However, there still must be a "suit" or the functional equivalent of a suit. There is no suit, or suit equivalent, pending against Stimson that seeks damages on account of property damage. Some or all of the amounts for which Stimson has submitted payment documentation may not be defense or indemnity expenses under Washington law and the terms of the primary policies. Accordingly, Plaintiffs seek a declaration as to what amount, if any, is a covered expense under the Policies;

b. Whether Stimson has met its burden in establishing the terms and conditions of policy no. CAP 436 16 43; and

c. Other insurance terms and conditions of the Policies that may limit or bar coverage for Stimson's claims. These include, but are not necessarily limited to: the

existence of an "occurrence" as defined in the policies; whether any amounts claimed or to be claimed constitute "damages" for which Stimson has a legal obligation to pay; exclusions for damage to property owned or occupied by an insured and for property damage arising out of the discharge, dispersal, release of escape of pollutants unless such discharge, dispersal, release or escape was sudden and accidental; and policy conditions requiring written notice of an occurrence as soon as practical.

PRAYER FOR RELIEF

WHEREFORE, CCC and ACC pray for the following relief:

1.  For a declaration consistent with the allegations herein; And

2.  For all such other relief this Court deems just and equitable.

Dated this 15th day of February 2017.

_s/Jacquelyn A. Beatty_
Jacquelyn A. Beatty, WSBA# 17567
**KARR TUTTLE CAMPBELL**
701 Fifth Avenue, Suite 3300
Seattle, WA 98104
Telephone:  206-223-1313
Facsimile:  206-682-7100
Email:  jbeatty@karrtuttle.com

_Attorneys for Continental Casualty Company and American Casualty Company of Reading, Pennsylvania_

COMPLAINT - 6
CASE NO.
#1081409 v1 / 44493-016

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100